**HINES AND CORRIGAN, INC.**
ATTORNEYS AT LAW
ONE JAMES P. MURPHY HIGHWAY
WEST WARWICK, RHODE ISLAND 02893

JOHN G. HINES
ROBERT P. CORRIGAN *

RALPH T. DELLA ROSA *
ELIZABETH A. BOURKE *
* ALSO MEMBER MASS. BAR

TELEPHONE: (401) 821-8266
FAX: (401) 821-6446
E-MAIL: HINES-CORRIGAN@CONVERGENT.NET

October 16, 2006

**Via Facsimile and Regular Mail**

Anthony F. Cottone, Esquire
55 Dorrance Street, Suite 400
Providence, RI 02903

Re: Vermont Mutual Insurance Co.
Claimant: Adrienne Southgate
Policy: HO12296942
Our File: 34702

Dear Mr. Cottone:

Thank you for your correspondence under dates of October 5 and October 11, 2006. I have passed the substance of your letters on to Vermont Mutual.

You are correct in your conclusion that this office has been retained to represent the interests of Vermont Mutual. In that regard, I am responding to your letter of October 2, 2006 to Jeff Gorman.

The alleged date that the loss was discovered by your client was August 31, 2006. The claim was assigned to Pelletier & Rourke, Inc. on September 1, 2006 and Mr. Jeffrey Gorman, associated with Pelletier & Rourke, Inc. inspected your client's premises on September 6, 2006.

As you know your client's dwelling is a one-story, single-family frame dwelling constructed over a masonry slab foundation. Ms. Southgate, at the time of this inspection, indicated that she has moved out of the dwelling on August 16, 2006 and relocated to an apartment located at 34 Lennon Street, Providence, RI. She further indicated that since the date of her move, she had engaged local contractors to complete some interior redecorating in anticipation of putting the dwelling up for sale. Consequently, she engaged the Carpet Outlet of Pawtucket, RI to remove and replace the wall to wall carpeting throughout the dwelling. Ms. Southgate then indicated that she had received a call from her flooring contractor indicating that the carpeting and carpet pad had been removed and there was rot damage to the plywood underlayment in the area of the rear entrance door in the first-level living

room. She further indicated that she also noticed surface mold growth on the painted walls and trim within the dwelling.

Ms. Southgate also told Mr. Gorman that during periods of heavy rain, she had noticed water pooling in the front and rear yard of the premises. Mr. Gorman at the time of the inspection of your client's property (9/6/06) indicated that there was no evidence of any roof leaks or leakage of water from any plumbing system component. Mr. Gorman also took a number of photographs depicting the condition of your client's property as of that particular date.

After the inspection was complete, Mr. Gorman prepared his report and sent it to Vermont Mutual along with the photographs that he had taken (10 in number) along with a signed non-waiver agreement; the Vermont Mutual Insurance Company Fungi, Mold, Wet Or Dry Rot questionnaire completed by your client; and sundry other enclosures. Vermont Mutual reviewed everything and then authorized Mr. Gorman, on its behalf, to issue a denial of coverage letter to your insured to which you make reference in your letter of October 2, 2006 to Mr. Gorman.

You have raised the issue that this particular claim should be covered because of certain language appearing on Page 2 of 3 of the endorsement added to Ms. Southgate's homeowner's policy. Specifically, you have referenced the Limited Fungi, Wet Or Dry Rot Or Bacteria Coverage Endorsement (HO 04 32 05 02) at page 2, adding Section 2e(9) to Section I, Perils Insured Against. It is your opinion that that particular language provides coverage to your client for the damage that she has sustained.

Ms. Southgate's insurance policy provides on page 6 of 15, under SECTION I - PERILS INSURED AGAINST, the coverage that applies to both the dwelling and other structures. The policy language initially indicates that "We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss: . . . (the policy then specifies two numbered paragraphs and under paragraph 2 has five separate subparagraphs with letters a through e and under subparagraph e there are eight numbers indicating matters that are not covered).

The endorsement to which reference was made earlier, on page 2 of 3, adds into the policy, under SECTION I - PERILS INSURED AGAINST, another exclusion which an exception to the exclusion so noted. The language is self-explanatory. The subject policy also sets forth exclusions which appear on page 7 and 8 of 15 under the area entitled SECTION 1 EXCLUSIONS. All of the exclusions are prefaced by what is known as an anti-concurrent lead in clause. That clause reads as follows:

1. We do not insure for loss cause directly or indirectly by any

of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Under SECTION 1 EXCLUSIONS there is included an exclusion for Water Damage meaning (among other things) surface water or water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building . . . . It is to that particular exclusionary language that Mr. Gorman in his letter makes reference.

The ISO anti-concurrent language has been accepted by a number of jurisdictions. It is Vermont's position that the anti-concurrent language trumps paragraph 2e(9) of the endorsement in the same manner as it would trump any of the other causes that are excluded as enumerated under SECTION 1 paragraph 2 a - e and including all subparagraphs of e. We have not found any case law which, as of yet, indicates that the anti-concurrent exclusionary language in conjunction with Water Damage associated with surface water or water below the surface of the ground, etc. must give way to the language appearing in paragraph 2e(9) as referenced in the endorsement. However, we are continuing our research to determine if there are any cases that speak to the relationship of the coverage grant within the HO04320502's exclusion for the constant or repeated seepage or leakage of water to the surface water exclusion subject to the HO00030491's concurrent causation language. We hope to have that research done by week's end and will then be in further contact with you.

Lastly, based upon the examination of your client's property by an experienced public adjuster, Jeffrey Gorman, it is our opinion that the origin of the water into your client's realty was through the entering of surface water or water below the surface of the ground as cited by Mr. Gorman in his September 7, 2006 letter.

Very truly yours,

John G. Hines

JGH/jad