Anthony F. Cottone

ATTORNEY AT LAW

55 Dorrance Street, Suite 400 • Providence, RI 02903

Admitted in Rhode Island, Massachusetts, Connecticut and New York

Tel: (401) 578-5696
Fax: (401) 861-2922
cottonelaw@cox.net

October 23, 2006

**By Facsimile (401) 821-6446**
**and First Class Mail**

John G. Hines, Esq.
HINES AND CORRIGAN, INC.
One James P. Murphy Highway
West Warwick, RI 02893

Re: Vermont Mutual Insurance Company
Policy # HO 12296942
Insured: Adrienne Southgate
Adjuster's File #61105

Dear Mr. Hines:

In the homeowners policy (form VMJ-HO91 (4/03)) with effective dates 11/18/05 to 11/28/06 issued by your client, Vermont Mutual Insurance Co. (hereinafter, the "Policy" and "Vermont Mutual," respectively) to my client, Adrienne Southgate, Vermont Mutual agreed to "insure against risk of direct loss to property," including the 'residence premises' shown in the Declarations" (22 Rosedale Avenue in Barrington) (hereinafter the "Premises"), if that loss "is a physical loss to property." See Policy, Section I, *Perils Insured Against*, at 6; id., Section I, *Property Coverages, Coverage A*, at 2. As will be discussed, the mold problem discovered at the Premises on or about August 31, 2006 and promptly reported by Ms. Southgate represents a "physical loss to property" within the meaning of the Policy, and the cost of remediating the problem constitutes a loss due to "property damage" caused by an "occurrence."

Property damage" is defined in the Policy as "physical injury to, destruction of, or loss of use of tangible property." Id., ¶6 at 1. And an "occurrence" is defined as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . property damage. " (Id., ¶ 5 at 1).

In your October 16, 2006 letter attempting to justify Vermont Mutual's September 12, 2006 wrongful denial of coverage and in the September 12, 2006 denial letter reference is made to the Section 1(c) exclusion entitled "Water Damage" located at pages

7-8 of the Policy. In fact, that section was expressly deleted in 1999 by a so-called "Homeowners Coverage Enhancement Amendment" (VM-CEA 3/99), which provides water back up and sump overflow coverage and provides in pertinent part as follows:

> Section I – Exclusions
> 3. Water Damage is deleted and replaced by the following:
> 3. Water Damage, meaning:
> a. Flood, ***surface water***, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or
> b. ***Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building***, sidewalk, driveway, foundation, swimming pool or other structure.

See Policy, Homeowners Coverage Enhancement Amendment, ¶4 at 2 of 3 (emphasis added). In your October 16 letter, while erroneously citing to the deleted exclusion section, you expressly referenced the language highlighted above, noting that "it is to that particular exclusionary language that Mr. Gorman in his letter makes reference." See your October 16 letter at 3.

However, in a *subsequently-dated* endorsement to Vermont Mutual's standard homeowner's policy drafted in 2002, "limited fungi, wet or dry rot, or bacteria coverage" was added. See Policy, Limited Fungi, Wet or Dry Rot, or Bacteria Coverage Endorsement (HO 04 32 05 02). That subsequently-dated amendment expressly covers loss caused by "fungi," defined as: "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or by-products or released by fungi." Id. at 1. Significantly, this subsequent endorsement also contains a provision specifying that coverage would not be provided for loss caused by:

> [c]onstant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months, or years ***unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all 'insureds' and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.***

Id. at 2, adding paragraph 2.e.(9) to Policy Section I, *Perils Insured Against* (emphasis added).

**Thus, the plain language of the 2002 amendment provides that "seepage or leakage of water" which causes mold damage is in fact covered provided it is unknown to the insureds and hidden, which is exactly the case here, as you tacitly admit in your October 16 letter when you recite (correctly) that the damage was only discovered by Ms. Southgate in August of this year, after she attempted to replace her wall-to-wall carpeting. Moreover, the inference in your October 16 letter that the visible pooling of water in the front and rear yards during heavy rain was in any way related to the mold damage is simply unfounded.**[1]

Faced with clear language contemplating coverage for mold damage caused by leaking or seeping water, you rely in your October 16 letter upon the general so-called "anti-concurrent language" contained within the Policy, which provides generally that any loss that is expressly excluded under the Policy "is excluded regardless of any other cause or event contributing concurrently or in sequence to the loss." See Policy, Section I, *Exclusions*, ¶ 1 at 7. You suggest that this language "has been accepted by a number of jurisdictions." See your October 16 letter at 3. Not surprisingly, however, you also admit that you have failed to find a case supporting the application of the general language to mold damage caused by seeping or leaking water.

In fact, what you are suggesting is that in 2002 Vermont Mutual ostensibly provided coverage for mold damage unknown to the insureds caused by the "seepage or leakage of water," only to then inform claimants who have the temerity to actually make such a claim that coverage for any seeping or leaking water had been excluded in another portion of the policy. **This is in and of itself evidence of bad faith under Rhode Island law.** A similar attempt led the Supreme Court of New Hampshire to comment that:

> [t]he plaintiff [insurer] gave the defendant coverage in a single, simple sentence easily understood by the common man in the market place. It attempted to take away a portion of this same coverage in paragraphs and language which even a lawyer, be he from Philadelphia or Bungy, would find it difficult to comprehend.

Peerless Ins. Co. v. Clough, 105 N.H. 76, 83, 193 A.2d 444, 449 (1963).

---

[1] In my October 2, 2006 letter to Adjuster Gorman I expressly asked him to provide "the specific facts (rather than conclusions) which led Vermont Mutual to conclude that the damage forming the basis of the Insured's claim was subject to the cited exclusion." Therefore, I must conclude that the basis of the denial laid out in your October 16 letter is complete and any facts not mentioned that may have been gleaned from Mr. Gorman's inspection, the photographs and/or the Fungi questionnaire completed by Ms. Southgate, are simply not relevant.

The point was emphasized in a slightly different context in Mallane v. Holyoke Mutual Ins. Co., 658 A.2d 18 (R.I. 1995), where the Rhode Island Supreme Court held that:

> 'reasonable expectations of coverage raised by the declarations page cannot be contradicted by the policy's boilerplate unless that declaration page itself clearly so warns the insured.'

Id. at 21 (emphasis added), *quoting* Lehrhoff v. Aetna Casualty and Surety Co., 271 N.J.Super. 340, 347, 638 A.2d 889, 892 (1994); see also Elliott Leases Cars, Inc. v. Quigley, 188 R.I. 321, 373 A.2d 810, 812 (1977) (holding that an "ordinary reader, in the face of such detail, would be warranted in concluding that any significant limitation on collision insurance would have been explicitly noted").

And as you well know, the general rules of construction applicable to insurance policies were set forth by the Rhode Island Supreme Court in Employers Mut. Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999):

> [a]s a general proposition, this Court applies the same rules when construing insurance policies as it does when construing contracts. See Martinelli v. Travelers Insurance Companies, 687 A.2d 443, 445 (R.I. 1996). We will not depart from the literal language of the policy absent a finding that the policy is ambiguous. See id. ***To determine whether a policy is ambiguous, we read the policy in its entirety, giving each word its plain, ordinary, and usual meaning, then we will strictly construe the policy in favor of the insured and against the insurer.*** See id. However, we will not engage in mental gymnastics, nor will we stretch the language in a policy to read ambiguity into it where none is present."

Id., *citing* Mallane v. Holyoke Mutual Ins. Co., 658 A.2d 18, 20 (R.I. 1995) (emphasis added). In addition, in Rhode Island and in a majority of jurisdictions it is clear that although a court "should not strain to identify an ambiguity where one does not exist" (see Fratus v. Republic Western Ins. Co., 963 F.Supp. 113, 116 (R.I. 1997) (citations omitted)), when there is an ambiguity, the rule that it be construed ***against*** the insurer is: "enforced even more strictly when the language at issue purports to limit the company's liability." Woods v. General Accident Ins., 738 N.Y.S.2d 791, 792 (N.Y. App. Div. 2002) (emphasis added).

In conclusion, Vermont Mutual has exhibited a text book case of bad faith in denying Ms. Southgate's claim for the cost of remediation and the loss of use of the Premises, the specific details of which have already been provided, a fact which is made all the more obvious by counsel's frank admission that he is in engaging in a fishing expedition to see if there are any cases to support his bizarre interpretation of his client's own Policy. Therefore, unless Vermont Mutual agrees to make good on the claim and to reimburse Ms. Southgate for the attorneys' fees she has been forced to incur to date by the close of business this Friday, October 27, 2006, suit will be commenced.

Very truly yours,

Anthony F. Cottone

cc: Adrienne Southgate