UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ADRIENNE SOUTHGATE

VS. C.A. NO. 06-500ML

VERMONT MUTUAL
INSURANCE COMPANY

DEFENDANT, VERMONT MUTUAL INSURANCE COMPANY'S OBJECTION TO THE PLAINTIFF'S MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR ATTORNEY FEES

Defendant, Vermont Mutual Insurance Company ("Vermont"), hereby objects to the Plaintiff's Motion pursuant to Fed.R.Civ.P. 37(a)(2)(B) to Compel Deposition Testimony from Deponent Jeffrey Gorman. Defendant's Memorandum in Support of its Objection separately accompanies this Objection.

Defendant respectfully requests a hearing on this matter.

Defendant,
By its Attorneys,

/s/ John G. Hines (0576)
/s/ Robert P. Corrigan (4233)
Hines & Corrigan, Inc.
One James P. Murphy Highway
West Warwick, RI 02893
401-821-6266
401-821-6446 (fax)

DATED: May 25, 2007

CERTIFICATION

I, the undersigned, certify that I forwarded by electronic email the within document to the following counsel fo record on the 25th day of May, 2007.

/s/ John G. Hines (0576)

Anthony F. Cottone, Esquire
55 Dorrance Street, Suite 400
Providence, RI 02903
cottonelaw@cox.net

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ADRIENNE SOUTHGATE**

**VS.** **C.A. NO. 06-500ML**

**VERMONT MUTUAL**
**INSURANCE COMPANY**

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER UNDER RULE 26(C)**

Defendant, Vermont Mutual Insurance Company ("Vermont"), hereby offers this Memorandum of Law in support of its Objection to Plaintiff's Motion to Compel and Vermont's Cross-Motion for a Protective Order.

At issue is plaintiff counsel's repeated attempts to extract a legal/expert opinion from a non-party fact witness and instructions from Vermont's counsel not to answer the posed question(s). It is Vermont's position that the question(s) posed were outside the scope of the deposition notice and that Vermont was well within the limits of Rule 30 when it instructed the deponent not to answer. Vermont separately seeks a protective order in connection with the same. Vermont, furthermore, has prepared a Motion pursuant to FED.R.Civ.P. 30(d)(4) along with a Memorandum of Fact and Law in Support thereof which is being filed separately from the present Objection and Memorandum submitted on behalf of Vermont.

**FACTUAL BACKGROUND**

The plaintiff submitted a claim for mold to her insurer, Vermont. In response, Vermont hired an independent adjusting company, Pelletier & Rourke, Inc., to investigate the claim. Pelletier & Rourke, Inc. sent Jeff Gorman ("Gorman"), a Rhode Island licensed adjuster and appraiser for 20 years, to investigate the claim. (Gorman depo., 4) Gorman went to the site of the claim on

September 6, 2006. Based on his inspection, knowledge, experience, and conversations with the Plaintiff, Gorman felt the mold was caused by surface and/or subsurface waters and reported the same to the company. (Gorman depo., 25). At the deposition, he testified that the company requested that he draft a letter about his findings. His proposed draft letter/first report included some policy language forms from Vermont. Gorman's proposed draft denial letter only had the first page composed by him; the remaining pages 2, 3, 4, 5, and 6 were the policy language forms language that had been sent to him by Vermont; Gorman did not actually quote the pertinent language, he just incorporated into his proposed draft denial letter the policy language forms themselves that had been provided to him by Vermont. That is self-evident by looking at the forms incorporated into the proposed denial letter. It is clear that the forms have been prepared by the Insurance Services Office (ISO) because page 2 of the proposed denial letter indicates that the page is a copyright product of Insurance Services, Inc. with a date of 1990; page 3 has the same copyright indication and furthermore has a copyright indication of "ISO Properties, Inc. 2002; page 43 has a copyright indication stating "Copyright, Insurance Services Offices, Inc. 1990; page 5 has a copyright indication of " © ISO Properties, Inc. 2002". (Gorman depo Exhibit 3). In addition, Gorman stated that: "A first report went giving the preliminary information to the company [Vermont], they review it, and then they come back to you with an opinion if they want to make a declination, and they tailor the letter to the specific claim." (Gorman depo. 45, 46, 47, 62 - 63) In fact that is what happened in this situation. The draft letter was never sent to the insured. Vermont reviewed the draft and made revisions to it, formulating it to their satisfaction as Vermont was responsible for making a determination as to coverage. The contract of insurance was between Vermont and the Plaintiff. Vermont then requested, and in fact authorized with Vermont's permission, Gorman sending on

behalf of Vermont the September 12, 2006 denial of coverage letter to the insured which was in fact done. (Gorman depo. Exhibit 3).

Upon receiving the letter that Vermont was denying coverage, plaintiff filed suit against Vermont on the grounds of breach of contract and bad faith. After suit was filed, plaintiff's counsel noticed the deposition of Gorman and requested that he bring certain documents with him, which he did. (See copy of deposition notice and exhibit to it attached as Exhibit A.) Gorman is neither a party to the Complaint, nor an expert witness. He was deposed as a fact witness since he was the individual from Pelletier & Rourke, Inc., the independent adjusting firm hired by Vermont, to proceed to the site and investigate the claim and determine the cause of the alleged damages. (Gorman depo. at 30).

At Gorman's deposition, both the draft letter, which was only sent to Vermont and not the plaintiff, and the final letter authorized by Vermont and sent to the plaintiff were offered as exhibits since they were in the Pelletier & Rourke file. Gorman was questioned about the differences in them and his knowledge of reasons for the same (Gorman depo. at 47). He testified that he did not made the decision to deny coverage. (Page 51) It is undisputed that the decision is not his to make as he is not a party to the policy and he is not an employee of Vermont; he is an employee of a first party property claim adjusting firm by the name of Pelletier & Rourke, Inc. (Gorman depo. 10 and 11). When plaintiff's counsel repeatedly requested a legal opinion on coverage from him, counsel for Vermont instructed him not to answer. Plaintiff's counsel has now filed a motion to compel.

In response to plaintiff's motion to compel, Vermont submits its objection and also separately files its own motion for a protective order that Gorman not be compelled to answer any question which calls for a coverage opinion or interpretation, a matter which he is not qualified to testify

about. In addition, Vermont has separately filed a Motion pursuant to FED.R.Civ.P. 30(d)(4) to Limit the Scope and Manner of the taking of the Deposition of Jeffrey Gorman along with an accompanying Memorandum in Support of it.

Before addressing the applicable law, Vermont desires to address the contention made by Attorney Cottone on page 3 of his Memorandum that the water exclusion language quoted by Gorman in the declination letter approved by Vermont and sent to the Plaintiff was not even a part of the policy that had been issued to the Plaintiff. Attorney Cottone is arguing form over substance. The pertinent language was quoted in the September 12, 2006 denial letter.

The language quoted in the September 12, 2006 denial letter sent to Adrienne Southgate (Gorman depo Exhibit 4) at the bottom of page 1 carrying over to the top of page 2 defines what **Water Damage** means. Paragraph 2 happened to be deleted but paragraphs 1 and 3 remained within the **homeowner's coverage endorsement amendment** (VM CEA3/99) (Please see Gorman depo Exhibit 2 - VM- CEA3/99 at page 2). Water damage defined within that particular amendment means:

> (a) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, weather or not driven by wind; or
> (b) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
> Direct loss by fire, explosion or theft resulting from water damage is covered.

Consequently, in the September 12th denial letter the policy exclusion with respect to surface water and/or water below the surface of the ground is quoted (as stated in paragraphs (a) and (c) above) as the reason for the denial. Gorman determined that the cause of the damage was surface water and/or subsurface water (Gorman depo. at 30, 35).

Attorney Cottone also makes reference on page 4 of his Memorandum that the first time that the anti-concurrent language of the policy was cited was in Attorney Hines' letter of October 16, 2006 (annexed hereto as Exhibit B). However that is not so. The anti-concurrent language was cited in the September 12, 2006 denial letter (Gorman depo Exhibit 4) as follows:

SECTION I - EXCLUSIONS

1. We do not insured for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**APPLICABLE LAW**

Rule 30(d)(1) provides:

Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4). (Emphasis added.)

Rule 30(d)(4) provides:

[O]n motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). (Emphasis added.)

Rule 26 (c)(4) provides the means for a party to obtain a protective order to limit discovery such that "certain matters not be inquired into, or that the scope of the

disclosure or discovery be limited to certain matters" (Emphasis added.)

In his memorandum, plaintiff's counsel cites the well known Rhode Island case of Kelvey v. Coughlin, 625 A.2d 775 (1993), wherein the Rhode Island Supreme Court advised that an attorney is only justified in instructing a deponent not to answer when the question calls for information that is privileged. Kelvey, however, concerned the deposition testimony of the defendant, a party to the case. This matter can be distinguished in that the deposition of Gorman is not the deposition of a party, but of a fact witness whose scope of exam is limited as set forth in his deposition notice.

## APPLICATION OF LAW AND FACTS

### A. Plaintiff's Counsel Misinterprets Gorman's Testimony

Vermont requests that the Court deny plaintiff's motion to compel and grant an order to limit the scope of the deposition so that Gorman, who is an employee of an independent adjusting company, is not compelled to give a legal opinion as to coverage under the Vermont Mutual policy with the plaintiff.

In fact plaintiff's counsel even admits in the deposition: **"I'm asking for a legal opinion he is not qualified to make**, but he made it clear that he informed Vermont Mutual of his opinion, he put it in writing, and they based their denial on his opinion . . ." (Gorman depo at 55) A clear reading of the deposition testimony shows that plaintiff's counsel mischaracterizes the testimony of Gorman and it is this misunderstanding which sets forth the wheels of plaintiff's repeated questioning of Gorman demanding a coverage opinion from him and Vermont's objection to the same and instruction not to answer.

The opinion that Gorman gave Vermont is not an opinion as to coverage, but an opinion as

to the cause of the mold/rot, which he concluded was surface and/or subsurface waters. Defense counsel had no problems in permitting Gorman to respond to such factual and or opinion questions concerning the investigation of the claim and related documentation, but plaintiff's counsel was pushing the envelope in trying to extract a legal opinion as to coverage from Gorman. Gorman is not an attorney. He is neither an employee of Vermont, nor is he an expert with respect to insurance policy coverage issues. The question asked to him, on three separate occasions, was wholly improper and plaintiff's counsel is trying to usurp the powers of the Court to compel Gorman to give an expert and/or legal opinion.

B. Questions Eliciting an Insurance Coverage Opinion are Outside the Scope of the Deposition

Vermont's counsel was within limits in instructing the witness not to answer. While no privilege *per se* was raised during the deposition, the federal rules allow a party to request that the scope of a deposition be limited under Rule 30(d)(4). Such request is certainly appropriate in this instance in which Gorman's deposition was specifically noticed with respect to the areas outlined in his deposition notice. (See Exhibit A) While the rules as to what questions may be asked in a deposition may be somewhat lenient and giving, by no means is there an unlimited scope to a deposition, especially when the limits of the deposition are already set forth in the deposition notice.

At no time in his deposition does Gorman ever state that he gave the opinion on coverage in this matter. His opinion goes to the cause of the loss and he is certainly qualified to testify about the same. In his testimony, Gorman explains that he is not responsible for the determination of coverage. When asked whether he made a decision to deny coverage, he says "I did not. I sent the company a report indicating all the circumstances that I had, and the company made the decision to deny the

claim " (Gorman depo page 51)

As stated previously, Gorman sent a draft letter to Vermont on his opinion as to the causation of the mold/rot and that letter also contained portions of forms sent by Vermont (ISO copyright language) on declinations of coverage. There were differences in the draft and final version of the letter and Gorman was questioned about both during his deposition. When explaining the differences in the draft and the final letter, Gorman explains: "It was reviewed by Joel Dyke at the company [Vermont], and what he came back to me with was because the origin appears to relate to surface water or water below the surface of the ground, the main body policy would negate coverage, and that's why he took out any language involving the mold endorsement, because he didn't think it pertained, because the loss was not covered under the main policy for surface or subsurface water. (Gorman depo 62) He later states: "They told me to take it out, because they did not, in their opinion, believe it applied, because they took a position on the coverage which was in the final draft." (Gorman depo 64)

Even after offering such explanation on the differences between the draft and the final version, Gorman was questioned again as to an opinion on coverage on language that was excluded from the final draft to the plaintiff. By pursuing such line of questioning, plaintiff's counsel was again pushing the envelope in trying to obtain a coverage opinion from Gorman. With a third attempt (55), (60) (64) to extricate a coverage opinion from Gorman the deposition was adjourned.

During the deposition, Gorman repeatedly explained that he is not responsible for making the determination as to coverage. Plaintiff's counsel, however, relentlessly pursued such line of questioning, leaving Vermont's counsel with no alternative but to instruct the witness not to answer on each occasion.

Defense counsel offered that the plaintiff depose Vermont Mutual as to coverage opinions requested in the deposition. (Gorman depo 64) Gorman testified as to what he was told by Vermont about the coverage and his knowledge of why Vermont made changes to his draft letter. Other than that he cannot be compelled to testify as to coverage opinions on an insurance policy as to which he is neither a party, nor an expert. Asking Gorman, an independent adjuster who conducted an investigation as to the cause of the claim for mold/rot damage for an opinion on coverage exceeds the scope of the deposition. Further, it infringes upon Vermont's status as the insurer, in which it ultimately makes the coverage determination in accordance with its interpretation of its policy.

C. <u>Gorman is not an Expert and Cannot Be Compelled to Give An Expert Opinion</u>

Under Rule 702 of the Federal Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Here, Mr. Gorman has not been nominated or qualified as an expert in insurance coverage issues. His opinion on the same is irrelevant and outside the scope of his deposition, which was a deposition of a fact witness. Therefore, he cannot be compelled to give an opinion as to the issue of coverage which is the core issue in this case.

Essentially, plaintiff's counsel is requesting an expert opinion from Gorman based upon hypothetical situations and assumed facts not in evidence. (Gorman depo 60) Clearly, this was not within the confines listed in the deposition notice. Gorman is not a party to this litigation. He is only a fact witness who was requested to bring documentation to the deposition . Since he was not

a party to the policy and he is not an expert, his testimony on a legal coverage opinion is both irrelevant and not within his area of expertise.

Additionally, asking Gorman for hypothetical coverage opinions/interpretations and his opinion of Vermont's coverage opinion "is not reasonably calculated to lead to the discovery of admissible evidence." See Rule 26(b)(1) To compel him to answer same creates a slippery slope of permitting fact witnesses to render expert opinions. In fact, not even an employee of Vermont could be compelled to provide a coverage opinion unless he or she was qualified to do so. Not only is Gorman not an employee of Vermont, but there is no indication that he is qualified to provide such an opinion.

If plaintiff wants to solicit coverage opinions on the Vermont policy, she should pose her questions directly to the insurer who makes the coverage opinions and not to an independent adjuster who investigates the factual causes of the claims. Defense counsel has offered the same and will comply with any 30(b)(6) deposition notice.

**ATTORNEY FEES**

In connection with her motion, plaintiff has requested attorney fees under Rule 37(a)(4). Defendant states that attorneys fees are not warranted in this matter as the grounds for the objection were more than substantially justified in light of the above. Further, a reading of the on the record colloquy between counsel clearly demonstrates that plaintiff's counsel was argumentative and created a hostile environment during the same, attempting to badger the witness into answering a question he is not qualified to answer.

**CONCLUSION**

For the foregoing reasons, Vermont requests that this Court deny the plaintiff's motion to compel and that it grant Vermont a protective order that Gorman not be questioned on matters dealing with interpretation/coverage opinions as to Vermont's policy with the plaintiff.

Defendant,
By its Attorneys,

/s/ John G. Hines (0576)
/s/ Robert P. Corrigan (4233)
Hines & Corrigan, Inc.
One James P. Murphy Highway
West Warwick, RI 02893
401-821-6266
401-821-6446 (fax)

DATED: May 25, 2007

CERTIFICATION

I, the undersigned, certify that I forwarded by electronic email the within document to the following counsel fo record on the 25th day of May, 2007.

/s/ John G. Hines (0576)

Anthony F. Cottone, Esquire
55 Dorrance Street, Suite 400
Providence, RI 02903
cottonelaw@cox.net

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ADRIENNE SOUTHGATE<br>*Plaintiff,* | : | |
| | : | |
| vs. | : | C.A. No. 06-500 ML |
| | : | |
| VERMONT MUTUAL<br>INSURANCE COMPANY,<br>*Defendant.* | :<br>:<br>: | |

**FIRST AMENDED NOTICE OF DEPOSITION**

Please be advised that Plaintiff's counsel will take the deposition of **JEFFREY GORMAN** of Pelletier & Rourke, Inc. on Thursday, **May 10, 2007, commencing at 2 p.m.** at 55 Dorrance Street, Suite 400, Providence, Rhode Island.

Further, it is requested that the deponent bring with him those records described in the attached Exhibit A.

Plaintiff,
ADRIENNE SOUTHGATE,
By her attorney,

Anthony F. Cottone, #3922
55 Dorrance Street, Suite 400
Providence, RI 02903
Tel: (401) 578-5696
Fax: (401) 861-2922
cottonelaw@cox.net

## CERTIFICATION

I hereby certify that a true and accurate copy of the above Notice of Deposition was mailed first class, postage pre-paid, to John G. Hines, Esq., HINES AND CORRIGAN, INC., One James P. Murphy Highway, West Warwick, RI 02893 on this 20th day of April, 2007.

______________________________

**Exhibit A**

1. Any and all documents referring or relating to any inspection by Pelletier & Rourke, Inc. of premises located at 22 Rosedale Avenue in Barrington, Rhode Island (hereinafter, the "Premises"), including, but not limited to any report of any such inspection, any photographs taken at the time of the inspection (or any time thereafter), and any forms completed by the owner of the Premises.

2. Any and all documents referring or relating to any mold damage, including but not limited to the cause of said damage, that may have been discovered at the Premises.

3. Any and all correspondence between Pelletier & Rourke, Inc. and either of the parties to the above-captioned litigation.

*Note: If any privilege is claimed as to any documents covered by the above requests, please identify the allegedly privileged document by date, author, general subject matter and if applicable, the intended recipient.

# EXHIBIT B

HINES AND CORRIGAN, INC.
ATTORNEYS AT LAW
ONE JAMES P. MURPHY HIGHWAY
WEST WARWICK, RHODE ISLAND 02893

JOHN G. HINES
ROBERT P. CORRIGAN *

RALPH T. DELLA ROSA *
ELIZABETH A. BOURKE *
* ALSO MEMBER MASS. BAR

TELEPHONE: (401) 821-6266
FAX: (401) 821-6446
E-MAIL: HINES-CORRIGAN@CONVERSENT.NET

October 16, 2006

**Via Facsimile and Regular Mail**

Anthony F. Cottone, Esquire
55 Dorrance Street, Suite 400
Providence, RI 02903

Re: Vermont Mutual Insurance Co.
Claimant: Adrienne Southgate
Policy: HO12296942
Our File: 34702

Dear Mr. Cottone:

Thank you for your correspondence under dates of October 5 and October 11, 2006. I have passed the substance of your letters on to Vermont Mutual.

You are correct in your conclusion that this office has been retained to represent the interests of Vermont Mutual. In that regard, I am responding to your letter of October 2, 2006 to Jeff Gorman.

The alleged date that the loss was discovered by your client was August 31, 2006. The claim was assigned to Pelletier & Rourke, Inc. on September 1, 2006 and Mr. Jeffrey Gorman, associated with Pelletier & Rourke, Inc. inspected your client's premises on September 6, 2006.

As you know your client's dwelling is a one-story, single-family frame dwelling constructed over a masonry slab foundation. Ms. Southgate, at the time of this inspection, indicated that she has moved out of the dwelling on August 16, 2006 and relocated to an apartment located at 34 Lennon Street, Providence, RI. She further indicated that since the date of her move, she had engaged local contractors to complete some interior redecorating in anticipation of putting the dwelling up for sale. Consequently, she engaged the Carpet Outlet of Pawtucket, RI to remove and replace the wall to wall carpeting throughout the dwelling. Ms. Southgate then indicated that she had received a call from her flooring contractor indicating that the carpeting and carpet pad had been removed and there was rot damage to the plywood underlayment in the area of the rear entrance door in the first-level living

room. She further indicated that she also noticed surface mold growth on the painted walls and trim within the dwelling.

Ms. Southgate also told Mr. Gorman that during periods of heavy rain, she had noticed water pooling in the front and rear yard of the premises. Mr. Gorman at the time of the inspection of your client's property (9/6/06) indicated that there was no evidence of any roof leaks or leakage of water from any plumbing system component. Mr. Gorman also took a number of photographs depicting the condition of your client's property as of that particular date.

After the inspection was complete, Mr. Gorman prepared his report and sent it to Vermont Mutual along with the photographs that he had taken (10 in number) along with a signed non-waiver agreement; the Vermont Mutual Insurance Company Fungi, Mold, Wet Or Dry Rot questionnaire completed by your client; and sundry other enclosures. Vermont Mutual reviewed everything and then authorized Mr. Gorman, on its behalf, to issue a denial of coverage letter to your insured to which you make reference in your letter of October 2, 2006 to Mr. Gorman.

You have raised the issue that this particular claim should be covered because of certain language appearing on Page 2 of 3 of the endorsement added to Ms. Southgate's homeowner's policy. Specifically, you have referenced the Limited Fungi, Wet Or Dry Rot Or Bacteria Coverage Endorsement (HO 04 32 05 02) at page 2, adding Section 2e(9) to Section I, Perils Insured Against. It is your opinion that that particular language provides coverage to your client for the damage that she has sustained.

Ms. Southgate's insurance policy provides on page 6 of 15, under SECTION I - PERILS INSURED AGAINST, the coverage that applies to both the dwelling and other structures. The policy language initially indicates that "We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss: . . . (the policy then specifies two numbered paragraphs and under paragraph 2 has five separate subparagraphs with letters a through e and under subparagraph e there are eight numbers indicating matters that are not covered).

The endorsement to which reference was made earlier, on page 2 of 3, adds into the policy, under SECTION I - PERILS INSURED AGAINST, another exclusion which an exception to the exclusion so noted. The language is self-explanatory. The subject policy also sets forth exclusions which appear on page 7 and 8 of 15 under the area entitled SECTION 1 EXCLUSIONS. All of the exclusions are prefaced by what is known as an anti-concurrent lead in clause. That clause reads as follows:

1. We do not insure for loss cause directly or indirectly by any

of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Under SECTION 1 EXCLUSIONS there is included an exclusion for Water Damage meaning (among other things) surface water or water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building . . . . It is to that particular exclusionary language that Mr. Gorman in his letter makes reference.

The ISO anti-concurrent language has been accepted by a number of jurisdictions. It is Vermont's position that the anti-concurrent language trumps paragraph 2e(9) of the endorsement in the same manner as it would trump any of the other causes that are excluded as enumerated under SECTION 1 paragraph 2 a - e and including all subparagraphs of e. We have not found any case law which, as of yet, indicates that the anti-concurrent exclusionary language in conjunction with Water Damage associated with surface water or water below the surface of the ground, etc. must give way to the language appearing in paragraph 2e(9) as referenced in the endorsement. However, we are continuing our research to determine if there are any cases that speak to the relationship of the coverage grant within the HO04320502's exclusion for the constant or repeated seepage or leakage of water to the surface water exclusion subject to the HO00030491's concurrent causation language. We hope to have that research done by week's end and will then be in further contact with you.

Lastly, based upon the examination of your client's property by an experienced public adjuster, Jeffrey Gorman, it is our opinion that the origin of the water into your client's realty was through the entering of surface water or water below the surface of the ground as cited by Mr. Gorman in his September 7, 2006 letter.

Very truly yours,

John G. Hines

JGH/jad