UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ADRIENNE SOUTHGATE, Plaintiff, | : | |
| v. | : | CA 06-500 ML |
| VERMONT MUTUAL INSURANCE COMPANY, Defendant. | : | |

**MEMORANDUM AND ORDER**
**RE FURTHER DEPOSITION OF JEFFREY GORMAN**

Before the Court are two motions:

1. Plaintiff's Motion to Compel Deposition Testimony and for Attorneys' Fees (Document ("Doc.") #16) ("Motion to Compel");

2. Defendant[']s Motion Pursuant to Fed.R.Civ.P. 30(d)(4) to Limit the Scope and Manner of the Taking of the Deposition of Jeffrey Gorman (Doc. #19) ("Motion for Protective Order").

A hearing was conducted on June 15, 2007. For the reasons stated herein, the Motion to Compel is granted and the Motion for Protective Order is denied.

**Background**

This is an action for breach of contract and bad faith based on a homeowners' insurance policy issued by Defendant Vermont Mutual Insurance Company ("Defendant" or "the Company"). See First Amended Verified Complaint (Doc. #11) ("Amended Complaint") ¶¶ 14-17. Around the end of August of 2006 Plaintiff Adrienne Southgate ("Plaintiff"), the policyholder, notified the Company of mold damage which she had discovered in the insured premises. See id. ¶¶ 4-6. She made a claim with the Company for remediation and for loss of use of the premises. See id. ¶ 6.

On or about September 6, 2006, Jeffrey A. Gorman ("Gorman"), an employee of a local insurance adjusting firm which the Company had retained, inspected the premises. See id. ¶ 7; see also

Plaintiff's Memorandum in Support of her Motion to Compel Deposition Testimony and for Attorneys' Fees ("Plaintiff's Mem."), Exhibit ("Ex.") A (Deposition of Jeffrey A. Gorman) ("Dep.") at 15. He questioned Plaintiff and took photographs of the premises and the mold damage. See Amended Complaint ¶ 7.

On September 12, 2006, Gorman sent Plaintiff a letter which stated that the Company had asked him to send her "this written explanation of why they will not be able to make payment for your claim." Hearing Ex. 4 at 1 (Letter from Gorman to Plaintiff of 9/12/06).[1] The letter continued:

> The information currently available is suggesting that the water, mold and rot damage was caused, in least in part, by the seepage of surface and/or subsurface water.
>
> Your claim is being denied for payment because your policy specifically excludes loss caused directly or indirectly by surface water or water below the surface of the ground, including water which seeps or leaks through a building, regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Id.

Plaintiff obtained legal counsel, who wrote to Gorman on October 2, 2006. See Letter from Cottone to Gorman of 10/2/06.[2] In that letter, Plaintiff's counsel cited provisions of the policy under which he believed the loss was covered and requested

---

[1] The copy of the deposition of Jeffrey A. Gorman which was provided to the Court did not include the exhibits. At the June 15, 2007, hearing, the Court directed Plaintiff's counsel to submit copies of the exhibits. Counsel did so, and the Court has designated these copies as hearing exhibits. See Doc. #21.

[2] The October 2, 2006, letter from Cottone to Gorman is identified as Exhibit 3 to both the Verified Complaint (Doc. #1) and the First Amended Complaint. See Verified Complaint ¶ 9; Amended Complaint ¶ 9. It appears that Plaintiff neglected to refile the exhibits with the Amended Complaint. See Docket. However, as there appears to be no dispute about the existence and content of the October 2, 2006, letter the Court cites it here.

specific facts which had led the Company to conclude that the mold damage was not covered under the policy. See id.

On October 16, 2006, an attorney for the Company replied to the October 2nd letter from Plaintiff's counsel. See Memorandum in Support of Defendant's Objection to Plaintiff's Motion to Compel and Cross-Motion for a Protective Order under Rule 26(c) ("Defendant's Mem."), Ex. B (Letter from Hines to Cottone of 10/16/06). In that letter, the Company's attorney explained that because "the origin of the water into [Plaintiff's] realty was through the entering of surface water or water below the surface of the ground ...," id. at 3, the mold damage was excluded under the water damage exclusion contained in the policy, see id. The Company's attorney also cited "the anti-concurrent language ...," id., of the policy and suggested that this language "trumps paragraph 2e(9) of the endorsement ...," id., which Plaintiff's counsel had cited in his October 2nd letter.

Plaintiff's counsel wrote back to the Company's attorney on October 23, 2006, advising that the exclusion upon which the Company had relied had been deleted from the policy by a so-called "Homeowners Coverage Enhancement Amendment." See Amended Complaint, Ex. 7[3] at 2. Plaintiff's counsel also claimed that the loss was covered under "the plain language of the 2002 amendment ...," id. at 3. The letter was apparently unsuccessful in obtaining the desired result because on November 16, 2006, Plaintiff filed the instant action.

**Facts**

Plaintiff deposed Gorman on May 10, 2007. See Dep. at 1. Gorman testified that he inspected the premises on September 6, 2006, see id. at 15, and that shortly thereafter he sent the

[3] As there appears to be no dispute about the existence and content of this letter, the Court cites it. See n.2.

Company a first report and "a draft letter of declination," id.[4] at 45. Although Gorman denied that he had made the decision to deny coverage and maintained that it was the Company's decision, see id. at 51, he acknowledged that he had given the Company an opinion that coverage should be denied "based on what I saw of the applicable coverage ...," id. at 52. Gorman also agreed that in denying the claim the Company was essentially following his advice.[5] See id.

---

[4] Gorman explained that this was in accordance with the Company's procedure:

> [T]heir procedure is when there is a potential denial with the first report, they want a draft letter, and they have some boilerplate forms that they give you, and you draft a letter. They look at it, and they tweak it, and they come back to you with the final draft, and then they instruct you to send it to the insured, and that's what happened here.

Deposition of Jeffrey A. Gorman ("Dep.") at 45.

[5]

Q. So, although you did not make the final decision, you recommended a denial of coverage, correct?

A. I gave them a draft Letter of Declination based on what I saw of the applicable coverage, for them to review and apply it to the coverage that they had. I gave them an opinion based on what I saw.

Q. That's what I asked you.

A. Yeah, okay.

Q. So you opined that coverage should be denied, but you gave it to the insurance company to actually --

A. Formulate the --

Q. ...formulate the letter?

A. Right.

Q. They were following your advice, essentially?

A. They, you know, they were.

Shortly after making this acknowledgment, Plaintiff's counsel attempted to question Gorman about specific provisions in the policy. See id. at 54-55. Defendant's attorney objected. See id. at 54. A portion of the exchange between counsel which followed is reproduced below:

> MR. HINES: First of all, I think you're asking for a coverage opinion from him as to what the policy says, and Mr. Gorman is a licensed insurance adjuster, and I'll let him talk about damage and stuff, but I won't let him talk about interpretation of policy language.
>
> MR. COTTONE: If you're going to direct him not to answer, that's fine, but we'll have to go to court on that, because he just gave me his testimony that he gave an opinion about the coverage, which I have in writing here. So, therefore, I'm entitled to ask him -- your objection is duly noted. I'm asking for a legal opinion he is not qualified to make, but he made it clear that that he informed Vermont Mutual of his opinion, he put it in writing, and they based their denial on his opinion, according to his testimony, so I'm entitled to ask him questions I think appropriate to --
>
> MR. HINES: And his denial letter sets forth the areas of the policy to which he is making reference.

Id. at 54-55.

After further exchanges between counsel, Defendant's attorney stated: "Go back to your question. I'm objecting. I'm not instructing him not to answer." Id. at 57. Plaintiff's counsel then attempted to pose the question again, but Defendant's attorney repeatedly interrupted, asking to what part of the policy Plaintiff's counsel was referring and interjecting extraneous comments. See id. at 57-60. Eventually, Plaintiff's counsel was able to pose the following question:

> Now my question to Mr. Gorman is, if we assume that the damage that you observed, and that you -- it was existing

---

Dep. at 51-52.

> that you didn't observe, but the rotting floor damage that you did observe was caused by hidden water beneath the floors of the residence, okay, that was unknown to Ms. Southgate, wouldn't, in fact, it be covered by the policy, damage, that is, under the plain language of Section 9 that you quoted to Vermont Mutual?

Id. at 60.

Defendant's attorney again objected and instructed Gorman not to answer the question. Id. Stating that he wanted "this on the record," id. at 61, Defendant's attorney then cited a particular provision of the policy which he apparently contended negated or rendered inapplicable the provision cited by Plaintiff's counsel. See id. After doing so, he stated: "so I'm not going to allow him to answer, because the policy answers it itself." Id. Plaintiff's counsel responded:

> MR. COTTONE: You have now interjected your opinion in a completely inappropriate way in the middle of a deposition, and prevented your client from answering a question. It's not appropriate. You can't coach a [w]itness during the entire deposition.

Id. at 61-62.

After Plaintiff's counsel stated that he would seek relief from the Court, Defendant's attorney asked to have the question read back. See id. at 62. After the question was read, Defendant's counsel stated that he would allow Gorman to answer the question, but that Defendant objected to it on the grounds that "the policy speaks for itself, and on the form of the question," id. Gorman then gave an answer but it was not responsive to the question. See id. Plaintiff's attorney redirected Gorman's attention to the policy language and rephrased the question. See id. at 63.

> Q. It says various things are not covered, "...unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all

'insureds' and is hidden within the walls or ceilings or beneath the floors..." Now if this seeping or leaking water that was present at Ms. Southgate's residence was hidden beneath the floors, and it was unknown to her, wouldn't it be covered -- you can have no opinion, or you can have an opinion, you can say yes or no, I'm just asking for your opinion since you cited this provision -- wouldn't it, by the plain language of what I just quoted to you, be covered by this policy?

A. I would say just with --

MR. HINES: Objection. I'm not going to allow him to answer, and I'll tell you why. I'll put it on the record.

(SO NOTED)

MR. HINES: The denial letter has been issued by the insurance company. He has issued it with the instructions of the insurance company. He is not the insurance company. The contract is with the insurance company. If you want to ask that to a representative of the insurance company, because they're the ones that are behind the denial, fine.

MR. COTTONE: John, we'll go to court. That's fine. We'll stop.

Id. at 63-64.

**Law**

Fed. R. Civ. P. 30(d)(1) provides that:

> Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).

Fed. R. Civ. P. 30(d)(1).

The Advisory Committee Notes to the 1993 Amendments to the Rule provide, with respect to subdivision d, that:

> The first sentence of new paragraph (1) provides

> that any objections during a deposition must be made concisely and in a non-argumentative and non-suggestive manner. Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond. While objections may, under the revised rule, be made during a deposition, they ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, *i.e.*, objections on grounds that might be immediately obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer. Under Rule 32(b), other objections can, even without the so-called "usual stipulation" preserving objections, be raised for the first time at trial and therefore should be kept to a minimum during a deposition.
>
> Directions to a deponent not to answer a question can be even more disruptive than objections. The second sentence of new paragraph (1) prohibits such directions except in the three circumstances indicated: to claim a privilege or protection against disclosure (*e.g.*, as work product), to enforce a court directive limiting the scope or length of permissible discovery, or to suspend a deposition to enable presentation of a motion under paragraph (3).

Fed. R. Civ. P. 30 advisory committee note to 1993 Amendments.

Rule 30(d)(4) provides that:

> At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c).

Fed. R. Civ. P. 30(d)(4).

**Discussion**

Defendant makes three arguments in its memorandum in opposition to the Motion to Compel and in support of its Motion for Protective Order. See Defendant's Mem. In these arguments,

Defendant does not differentiate between the motions. Defendant appears to be of the belief that if the Court concludes that Gorman should not be required to answer the objected-to question, then its counsel's conduct is vindicated and the question of sanctions is moot. If Defendant in fact has such a belief, it is mistaken because there are two distinct issues here. The first is whether the actions of Defendant's attorney at the deposition in preventing Gorman from answering were proper under Fed. R. Civ. P. 30(d)(1) and applicable case law. The second is whether Gorman should now be required to answer the question.

## I. Deposition Conduct

As already described, Defendant's attorney repeatedly prevented Gorman from answering the question which Plaintiff's counsel attempted to pose. See Dep. at 54-64. Rule 30(d)(1) explicitly states that: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1). Defendant does not claim that its attorney was acting to preserve a privilege or to enforce a limitation directed by this Court. Rather, it maintains that his conduct was permissible under Rule 30(d)(4). See Defendant's Mem. at 5-6.

Rule 30(d)(4) requires "a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party ...." Fed. R. Civ. P. 30(d)(4). Defendant asserts that "a reading of the on the record colloquy between counsel clearly demonstrates that plaintiff's counsel was argumentative and created a hostile environment during the same, attempting to badger the witness into answering a question he is not qualified to answer." Defendant's Mem. at 10. The Court rejects this contention. The "record colloquy" cited by Defendant was caused by Defendant's

attorney in objecting, withdrawing objections, interjecting extraneous comments, and citing policy provisions (which arguably suggested an answer to the deponent). See Dep. at 54-64. It appears that these actions strained and ultimately exhausted the patience of Plaintiff's attorney. See id. at 57-64. If a "hostile environment" was created, it was the fault of Defendant's attorney who was not adhering to the requirements of Rule 30(d)(1). See United States ex rel. Tiesinga v. Dianon Sys., Inc., 240 F.R.D. 40, 43 (D. Conn. 2006)("Ordinarily, it is improper for counsel to direct a witness not to answer a question posed at a deposition, even if the question is improper or beyond the scope of a deposition notice."); J.C. v. Soc'y of Jesus, Oregon Province, No. CO5-1662JLR, 2006 WL 3158814, at *6 (W.D. Wash. Oct. 27, 2006)("Except when protecting a privilege, or in extraordinary circumstances not present here, counsel cannot prevent witnesses from answering questions. Instead, counsel must make their objections on the record and rely on the court to rule upon the objections if the parties use the deposition in later proceedings."); see also Barnes v. Bd. of Educ., No. 2:06-cv-0532, 2007 WL 1236190, at *3 (S.D. Ohio Apr. 26, 2007)("Under the rules pertaining to the conduct of depositions ... a party is ordinarily not permitted to instruct a witness not to answer questions based on a relevance objection."); Namoury v. Tibbetts, No. 3:04CV599 (WWE), 2007 WL 638436, at *3 (D. Conn. Feb. 27, 2007)(finding defense counsel's instruction that deponent not answer hypothetical questions to be in violation of Federal Rules of Civil Procedure); J.C. v. Soc'y of Jesus, Oregon Province, 2006 WL 3158814, at *6 (stating that attorney's instruction "not to answer because question allegedly called for a legal conclusion" violated Rule 30); id. (finding that attorney obstructed deposition by repeatedly instructing Rule 30(b)(6) witness "not to answer questions that she believed were beyond

the scope of [the plaintiff's] designation of topics under Rule 30(b)(6)"); Kelvey v. Coughlin, 625 A.2d 775 (R.I. 1993);[6] cf. Redwood v. Dobson, 476 F.3d 462, 469 (7th Cir. 2007)("[D]iscovery may be used to elicit information that will lead to relevant evidence; each question and answer need not be one that could be one that would itself be proper at trial."); Plaisted v. Geisinger Med. Ctr., 210 F.R.D. 527, 534 (M.D. Pa. 2002)("A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer.")(quoting Hall v. Clifton Precision, 150 F.R.D. 525, 528 (E.D. Pa. 1993) (footnote omitted)).

Moreover, the record does not support Defendant's claim that

---

[6] In Kelvey v. Coughlin, 625 A.2d 775 (1993), the Rhode Island Supreme Court "consult[ed] the precedents in the federal courts ...," id. at 776, and proscribed conditions for the conduct of depositions. They included:

> 1. Counsel for the deponent shall refrain from gratuitous comments and directing the deponent in regard to times, dates, documents, testimony, and the like.
> 2. Counsel shall refrain from cuing the deponent by objecting in any manner other than stating an objection for the record followed by a word or two describing the legal basis for the objection.
> 3. Counsel shall refrain from directing the deponent not to answer any questions submitted unless the question calls for privileged information.
> 4. Counsel shall refrain from dialogue on the record during the course of the deposition.

Id. at 777.

The record reflects that Defendant's attorney did not follow the above rules. See Dep. at 41-42, 54-64. The Court rejects Defendant's contention that the rules are inapplicable to the instant matter because the deponent in Kelvey was a party and Gorman is a fact witness. There is no suggestion in Kelvey that the rules are limited to party depositions. Moreover, the Court can conceive of no reason why the disruptive behavior proscribed by the rules should be permitted in any deposition.

Plaintiff's counsel was attempting to badger Gorman. Except for a brief exchange earlier in the deposition, see Dep. at 40-41, Gorman's responses, especially those just before Defendant's attorney announced for the third time that he would not allow Gorman to answer, reflect no discomfort and indicate a willingness to answer the question being posed, see Dep. at 63 ("A. Yup. Let me flip to it. Got it. Okay."); id. at 64 ("I would say just with ---").

Defendant claims plaintiff's counsel was "pushing the envelope in trying to obtain a coverage opinion from Gorman," Defendant's Mem. at 8, because Gorman was not responsible for making the determination as to coverage, id. Defendant further claims that because Plaintiff's counsel pursued this line of questioning "relentlessly," id., Defendant's counsel was left "with no alternative but to instruct the witness not to answer on each occasion," id. The Court fails to see why this is so. Even accepting Defendant's premise, the worst that would have happened is that Gorman would have given an opinion which he was not qualified to give. Defendant's objection to the question would have enabled Defendant to seek a ruling from the Court at a later time if Plaintiff sought to use the answer in an improper manner.

In sum, the Court finds that the action of Defendant's counsel in directing Gorman not to answer was improper and that it violated Rule 30(d)(1).

**II. Requiring Answer**

The Court now turns to the issue of whether Gorman should be required to answer the objected-to question. In the Motion for Protective Order Defendant requests that "the Court limit the scope and manner of the taking of the deposition of Mr. Gorman such that he will not be asked questions dealing with coverage interpretation." Motion for Protective Order at 2. Defendant makes three arguments in support of this motion. First,

Defendant appears to argue that Gorman did not give Defendant an opinion as to coverage and that, therefore, he should not be compelled to give a opinion as to coverage under the policy. See Defendant's Mem. at 7. In Defendant's view, "[t]he opinion that Gorman gave Vermont is not an opinion as to coverage, but an opinion as to the cause of the mold/rot, which he concluded was surface and/or subsurface waters." Id. at 6-7. The record does not support Defendant's view. See Dep. at 52. Gorman testified that he gave the Company a draft Letter of Declination "based on what I saw **of the applicable coverage**, for them to review and apply it to the coverage that they had. I gave them an opinion based on what I saw." Id. (bold added). If Gorman had only opined that the cause of the mold/rot was surface and/or subsurface waters and did not form an opinion as to whether the loss was covered, there would have been no reason for him to draft a letter of declination. However, he did draft such a letter, evidencing his opinion that coverage should be denied. See id.

Defendant notes that Plaintiff's counsel stated at one point "I'm asking for a legal opinion he is not qualified to make ...," Defendant's Mem. at 6 (quoting Dep. at 55), and suggests that this statement demonstrates the impropriety of the question, see id. The Court is not so persuaded. In the first place, the fact that an answer will not be admissible at trial does not make the question at a deposition improper. See Redwood v. Dobson, 476 F.3d at 469 (stating that discovery may be used to elicit information that will lead to relevant evidence and that each question at a deposition need not be one which would be proper at trial). Second, the statement could be read as an attempt by Plaintiff's counsel to persuade Defendant's counsel that Plaintiff recognized that the answer would not be binding on Defendant or admissible at trial, but that Defendant's counsel

should still permit Gorman to answer. See Dep. at 55. Third, given that Gorman had opined to the Company that the loss was not covered under the policy, see id. at 52, Plaintiff's question about coverage was within the scope of the discovery authorized by Rule 26, see Fed. R. Civ. P. Rule 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...."); cf. Namoury v. Tibbetts, 2007 WL 638436, at *3 (finding that hypothetical questions posed to defendant attorney regarding his knowledge of real estate law was relevant to issues presented and granting motion to compel deposition testimony).

Defendant next argues that the questions were outside the scope of the deposition notice. See Defendant's Mem. at 7. However, the notice of deposition which Defendant cites is actually Exhibit A to the First Amended Notice of Deposition. Exhibit A does not set forth areas of examination, but rather requests "that the deponent bring with him those records described in ... Exhibit A." See id., Ex. A at 1 (First Amended Notice of Deposition). Thus, the objected-to questions were not outside the scope of the deposition notice.

Lastly, Plaintiff argues that Gorman is not an expert and cannot be compelled to give an expert opinion. See Defendant's Mem. at 9. There is no indication in the record that Plaintiff sought to have Gorman render an expert opinion. Indeed, as previously noted, Plaintiff's counsel recognized that Gorman was not qualified to give a legal opinion. See Dep. at 55. Rather, it appears that Plaintiff's counsel was simply trying to determine if Gorman's opinion that there was no coverage for the loss would be the same if a given factual circumstance existed (specifically, if Plaintiff was unaware of seeping or leaking water beneath the floors, see Dep. at 63). Cf. Namoury v. Tibbetts, 2007 WL 638436, at *2 (rejecting as "without merit"

defendants' argument that because deponents "are fact witnesses, hypothetical questions regarding real estate law and practice are improper and outside the scope of Fed. R. Evid. 701"). Given the facts of this case, the Court finds this to be within the scope of permissible discovery.

Accordingly, the Motion to Compel is GRANTED and the Motion for Protective Order is DENIED. Gorman shall answer the question which he was previously instructed not to answer. At all future depositions, Defendant's attorney shall comply with the Federal Rules of Civil Procedure, especially Rule 30(d)(1).

**III. Attorney's Fees**

Plaintiff's request for attorney's fees pursuant to Fed. R. Civ. P. 37(a)(4)(A)[7] is GRANTED. Plaintiff's counsel is directed to submit a bill of costs incurred in prosecuting the Motion to Compel to Defendant's counsel within fourteen days of the date of this Memorandum and Order. If Defendant disputes the costs claimed by Plaintiff's counsel, it shall file an objection with the Court within ten days of receipt of the bill.

So ordered.

---

[7] Fed. R. Civ. P. 37(a)(4) provides in relevant part:

> (A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. Rule 37(A)(4).

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 21, 2007