UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ADRIENNE SOUTHGATE

VS. C.A. NO. 06-500ML

VERMONT MUTUAL
INSURANCE COMPANY

# DEFENDANT VERMONT MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNT I - BREACH OF CONTRACT OF PLAINTIFF'S AMENDED COMPLAINT

Respectfully Submitted,
By its Attorneys,

/s/ John G. Hines (0576)
/s/ Robert P. Corrigan (4233)
Hines & Corrigan, Inc.
One James P. Murphy Highway
West Warwick, RI 02893
401-821-6266
401-821-6446 (fax)

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Summary of Argument | 1 |
| II. | Undisputed Facts | 2 |
| III. | Insurance Contract | 6 |
| IV. | Standard For Decision | 9 |
| V. | Law And Argument | 9 |
| VI. | Conclusion | 15 |

# TABLE OF AUTHORITIES

## TABLE OF CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986).

*Continental Casualty Co. v. Canadien Universal Insurance Co.*, 924 F.2d 370, 373 (1st. Cir. 1991).

*Front Row Theatre v. American Manufacturer's Mutual Ins. Co.*, 18 F.3d 1343 (6th Cir. 1994).

*Kula v. State Farm Fire and Casualty Co.*, 628 N.Y.S. 988 (1995).

*Leonard v. Nationwide Mutual Ins. Co.*, _____ F.3d _____ (5th Cir. 2007).

*Nortek, Inc. v. Liberty Mutual Ins. Co.,* 858 F. Supp. 1231, 1234 (D.R.I.1993).

*Pakmark v. Liberty Mutual*, 943 S.W. 2d 256 (Mo. 1997).

*Preferred Mutual Ins. Co. v. The Travelers Companies*, 123 F.3d 136 (1st Cir. 1997).

*Sunshine Motors v. New Hampshire Insurance Co.*, 209 Mich. App. 58, 530 N.W. 2d 120 (1995).

*T.H.E. Insurance Co. V. Charles Boyer Children's Trust*, _____ F.Supp.2d _____ (M.D. Pa. 2006).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT VERMONT MUTUAL INSURANCE COMPANY**

Defendant Vermont Mutual Insurance Company ("Vermont") respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment under Federal Rule of Civil Procedure 56 ( c ).

## I. Summary of Argument

Vermont respectfully requests that the Court enter summary judgment in its favor on Count I - Breach of Contract against the plaintiff for the following reasons:

The contract between the parties is an insurance policy. The policy form is ISO form H 115 (4-91) with endorsements thereto. (A copy of the policy form and endorsements thereto is attached as Exhibit "A" to the Memorandum.) The policy specifically excludes coverage for losses caused in part by "surface water" and "water below the surface of the ground ... which seeps or leaks through a building...foundation...or other structure."

The policy exclusions preclude not only losses caused by the above quoted causes, but also any such loss "regardless of any other cause or event contributing concurrently or in any sequence to the loss." That is, if the loss is caused, in part, by a non-covered event such as surface or subsurface water, the entire loss is not covered. This 'anti-concurrent causation' language found in the policy precludes coverage for the loss, because it is undisputed that the loss in question was caused in whole or in part by the infiltration of surface water and/or subsurface water into the premises.

## II. Undisputed Facts

The plaintiff, Adrienne Southgate was the owner of 22 Rosedale Avenue in Barrington, Rhode Island. The premises was insured by Vermont against risk of direct physical loss under policy no. HO1 2-29-69-42.

The premises is a one-story single family home. The house was constructed on a masonry slab. There is no basement and there is no second story. (Exhibit "B" Southgate depo. p. 9). The left side of the house was originally constructed as a garage. The original garage extended beyond the back wall of the house. The right side of the house was also extended backwards. This was done when the plaintiff added an extension wing to that side of the house within which she built her bedroom. On the date of the alleged loss, the house was a double "L" with a cement patio in the middle that separated the wings on the opposite sides of the house. (Southgate depo p. 21).

The original portion of the house was built on a slab that was above grade. The original garage was built on a slab that was even with the grade of the land. When the garage was converted to a family room, a wooden sub-floor was constructed on top of the slab with 2"x4"s and plywood to make it even with the finished floor of the original house. (Southgate depo pp. 22-24).

The addition to the right side of the premises which contained the plaintiff's bedroom was constructed on an extension of the original masonry slab, which was above grade. The extended portion of the slab in this area was not treated with a vapor barrier to protect it from water infiltration. (Southgate depo. pp. 56-57).

A door from the family room exits directly onto the cement patio at grade level while a door from the plaintiff's bedroom exits directly onto the same cement patio above grade.

(Southgate depo. pp. 57-58). These doors are located across the cement patio from each other. (Southgate depo. p.57). The family room, that was once a garage and all of the bedrooms in the house were all covered by wall-to-wall carpeting. (Southgate depo. pp. 13-16).

On August 31, 2006 the plaintiff was in the process of making improvements to the premises. She intended to place the house on the market for sale. (Southgate depo. p.14). As part of that process she contracted with a firm to remove and replace all of the carpets in the house with the exception of one room. (Southgate depo. p. 15-16).

While that work was being done, the plaintiff received a telephone call from the carpet company representative who advised that "the subfloor has rotted" (Southgate depo. p. 17) and that "mold is crawling up your walls" (Southgate depo. p. 21).

When the plaintiff returned to the property to observe the conditions, she was able to determine that they were much less severe than originally reported. (Southgate depo. p. 18). She noted that all of the carpets and the padding had been removed from all the floors in the house. (Southgate depo. p. 19). There was a small area of wood rot to the sub-floor of the family room in the area adjacent to the door which exited on to the cement patio. (Southgate depo. p. 18). There was a single area of spotting mold around the frame of the door which exits from the hallway off of the plaintiff's bedroom to the opposite side of that same cement patio. (Southgate depo. 21). There were no other areas of mold growth or wood rot observed in the premises. (Southgate depo. pp. 21-22).

Before actually observing these conditions, the plaintiff reported the loss to her insurance agency in the manner described by her carpet removal company on or about September 1, 2006. (Southgate depo. pp. 39-40). Vermont received notice of the claim from the plaintiff's agency

and assigned licensed claim adjuster Jeffrey Gorman of the firm of Pelletier & Rourke to make an inspection. (Exhibit "C" Gorman depo. Vol. I p. 16). Mr. Gorman met with the plaintiff on September 6, 2006 at the premises. (Gorman depo. Vol. I pp.15-17 and Southgate depo. p. 41).

Gorman was shown the entire premises by the plaintiff. All of the carpets had been removed and disposed of by the carpet installers. There were only two (2) areas of alleged property damage. There was the wood rot in the sub-floor of the family room and the spots of mold in the door way off of the plaintiff's bedroom.(Southgate depo pp. 43-44 and Gorman depo. Vol. I pp.18-38).

The plaintiff denied the occurrence of any type of plumbing leaks, roof leaks or hot water tank failures. (Southgate depo. pp. 44-45). Plaintiff further denied any type of incident or occurrence where large amounts of water had spilled or been released in her home. (Southgate depo. p. 53). Plaintiff was asked if she ever experienced water pooling outside the dwelling after a heavy rain. She told Gorman it pooled in the front of the house, but cannot remember if she told him it pooled in the back near the cement patio. (Southgate depo. pp. 45-46).

The cement patio abutted the masonry slab foundation at the door where the wood rot in the family room was discovered. The cement patio extended across the backyard and abutted the masonry slab at the doorway leading to the plaintiff's bedroom where the spots of mold were discovered. (Southgate depo. pp. 46-48).

Based upon his discussion with the plaintiff and his visual observations of the premises, Gorman concluded that both areas of alleged property damaged were caused by surface and/or subsurface water. (Gorman depo. Vol. I p. 30-34). Gorman reported his findings and conclusions to Vermont which then authorized him to issue a denial of coverage letter to the

plaintiff in the form approved by Vermont. (Gorman depo. Vol. I p.44-47). That denial letter was sent to the plaintiff on or about September 12, 2007. (Vermont Denial Letter attached as exhibit "D ").

After the claim was denied, the plaintiff continued to look for additional items of potential loss. She sought consultation with two or three different mold testing/remediation firms. (Southgate depo. p. 55). They drilled holes in the walls of the plaintiff's bedroom to test for mold. These holes were drilled into the walls on which the spots of mold had been observed. (Southgate depo. p. 55). Plaintiff chose a contractor to remove the sheetrock walls of her bedroom and spray a fungicide on mold discovered therein. (Southgate depo. pp. 63-66).

The plaintiff's critical inquiry during this process was to determine the cause of the mold growth in the bedroom. (Southgate depo. p. 68). She asked every remediation and testing firm that visited the property if they could determine the cause of the mold. Each contractor gave her the same answer. (Southgate depo. p. 68). The mold found in the bedroom area was caused by water percolating up through the masonry slab that formed the addition to the right side of the house. (Southgate depo. p. 56, 74).

No one was ever able to discover a plumbing leak or a roof leak in the premises. (Southgate depo. p. 68-69). However, when the carpeting was removed in the plaintiff's bedroom, it was discovered that a vapor barrier had never been applied to the cement floor when the addition to the bedroom was constructed. This allowed water to percolate up through the untreated slab and thereafter become trapped within the walls. (Southgate depo. pp. 56-57, 68-69). All of the plaintiff's contractors, consulted or retained, agreed that this was the cause of the mold. (Southgate depo. p. 68).

The unanimous opinion of the various contractors is supported by the plaintiff's own reporting of the claim to BASH Mold & Remediation, her chosen remediator. (Exhibit "E" Brown depo. pp. 25-26) (see also BASH Questionnaire *Regarding Mold Remediation Jobs*, exhibit "F "). In her initial reporting, she advised BASH that the damage was caused by her having a "high water table".

However, when plaintiff produced Mike Brown of BASH Mold & Remediation as an 'expert witness', he equivocated greatly in his expression of any opinion on the cause of the mold in the bedroom. He stated that he was 'not positive', that he had to 'guess' and that he had failed to advise the plaintiff of this opinion previously. Nonetheless, he stated that 'maybe' rain was coming in through the side of the house. (Brown depo. pp. 35-36). But he could not rule out the possibility of moisture coming up through the cement slab. (Brown depo. pp. 36, 39). Interestingly, he made no effort to determine the cause of the wood rot on the subfloor of the family room. (Brown depo. p. 19).

Both Gorman, the insurance adjuster and Adrienne Southgate, the plaintiff conducted independent inquires into the cause of the various items of property damage. They both concluded that the cause of each was the infiltration of surface water or water from below the surface of the ground. Their investigations revealed no other possibilities. Plaintiff then subsequently offered the opinion of Mr. Brown. He made no determination of the cause of the wood rot. As for the mold, once again he made no conclusions, but rather only a 'guess'.

**III. The Contract of Insurance**

Vermont Mutual Insurance Company issued to Adrienne Southgate a homeowners policy on 22 Rosedale Avenue, Barrington, Rhode Island with effective dates of November 28, 2005

through November 28, 2006 (policy no. HO1 2-29-69-42). The policy was written on ISO form H 115 (4-91) with endorsements thereto (copies of policy forms attached as Exhibit "A").

The property coverages under the policy are contained in Section I. For purposes of the discussion *supra*, the following portions of the policy are pertinent beginning at the Section I coverages found at page 6 of 15 of form H 115 (4-91), which reads:

> **SECTION - PERILS INSURED AGAINST**
>
> **COVERAGE A - DWELLING AND**
> **COVERAGE B - OTHER STRUCTURES**
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:
>
> **2.** Caused by:
> **e.** Any of the following:
> **(3)** Smog, rust or other corrosion, mold, wet or dry rot;

The basic policy form excluded all property coverage for mold. That language was removed from the policy and the property coverage was amended by endorsement. The applicable endorsement is identified as LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE (HO 04 32 05 02). At page 2 of 3 of that endorsement, the above exclusion is deleted and certain coverages are added in the following form:

> Paragraph **2.e.(3)** is deleted and replaced by the following:
> **(3)** Smog, rust or other corrosion;
>
> Paragraph **2.e.9** is added:
> **(9)** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the pressure or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

The net effect of the amendatory endorsement was to provide limited coverage for mold and wet or dry rot as well as limited coverage for seepage or leakage of water or moisture, subject to the Section I Exclusions.

The Section I Exclusions are found in the policy at pages 7 and 8 of form H 115 (4-91) HO 00 03 04 91. In pertinent part, the exclusions read:

**SECTION I - EXCLUSIONS**

**1.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**c.** **Water Damage**, meaning:

**(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**(2)** Water which backs up through sewers or drains or which overflows from a sump; or

**(3)** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

That exclusion was also amended by an endorsement issued before the date of the loss which is identified as **HOMEOWNERS COVERAGE ENHANCEMENT AMENDMENT** VM-CEA 3/99. At page 2 of 3 it reads in pertinent part as follows:

4. Section I - Exclusions

3. Water Damage is deleted and replaced by the following:

3. Water Damage, meaning:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

b. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

The net effect of this endorsement was to remove the exclusion for water back up or sump overflow and provide limited coverage for that type of loss. Losses caused directly or

indirectly, in whole or in part by surface and/or subsurface water were still excluded from coverage.

## IV. Standard For Decision

Federal Rule of Civil Procedure 56 ( c ) sets forth the standard for ruling on summary judgment motions as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. F.R.C.P. 56 ( c ).

On a motion for summary judgment the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadien Universal Insurance Co.*, 924 F.2d 370, 373 (1st. Cir. 1991).

"The initial burden in a summary judgment motion requires the moving party to show that no genuine issue exists as to any material fact." *Nortek, Inc. v. Liberty Mutual Ins. Co.*, 858 F. Supp. 1231, 1234 (D.R.I.1993). Further, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986). The motion should be granted in the absence of evidence that could reasonably support a jury verdict. The Court should ask "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.*

## V. Law and Argument

The insurance policy specifically excludes coverage for losses caused by surface or subsurface water. However, the loss need not be caused exclusively by surface or subsurface

water. The policy contains language referred by various courts as an "anti-concurrent causation preface" or "concurrent causation preface". That language is found in the lead-in to the Section I - Exclusions. Losses caused directly or indirectly by surface water or water below the surface of the ground are excluded. Furthermore, "such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

The policy language quoted above is intended to deny coverage for losses when the loss has multiple causes, one of which is covered and one of which is not. In effect, if a non-covered cause of loss contributes in any way to the loss, then the loss is not covered. In the present case, the infiltration of surface water or subsurface water is an undisputed contributing cause of each item of the loss. The best the plaintiff can do is offer a 'guess' that another cause 'maybe' involved without being able to rule out the excluded causes.

**a. Wood rot in the family room**

After a proper investigation, the logical conclusion of adjuster Gorman was that the wood rot to the subfloor was caused by the infiltration of surface water or subsurface water. That conclusion as to the cause of the loss has gone uncontradicted.

The wood rot was located immediately adjacent to a doorway which abutted a cement patio in the back yard. The cement patio was located in a small alcove at the rear of the house that was enclosed on three (3) sides by the dwelling. The patio was even with the grade of the slab on the family room (formerly the garage). The proximity of the wood rot by the door inside the dwelling to the patio outside revealed the source of the moisture. Either surface water or water from below the surface of the ground was entering the space between the cement slab and the wooden subfloor as determined by adjuster Gorman. Plaintiff has made no attempt to argue

otherwise. Plaintiff has provided no reliable evidence of an alternative theory.

Because there is no reliable evidence offered to show that surface or subsurface water was not a contributing cause of the loss, the denial of coverage issued by Vermont was proper.

**b. Mold in the bedroom**

After a proper investigation, adjuster Gorman determined that the mold on the door frame and hallway walls to the bedroom was caused by the infiltration of surface water or subsurface water. After Vermont denied the claim based upon that investigation, the plaintiff removed sections of the walls. She found more mold inside of the walls. Her independent investigation which relied upon the opinions of multiple contractors determined the mold was caused by the "percolating" of water up through the slab.

The mold was discovered on both sides of a wall adjacent to the cement patio in the backyard alcove. The mold within the walls was found in an area where an addition had been made to the existing bedroom. There was no vapor barrier applied to the cement slab of the addition. The plaintiff reported to Gorman that she had pooling of water in the front yard, but could not remember if she told him she also had it in the backyard. The plaintiff told BASH that she had a high water table.

Adjuster Gorman determined that the mold he was able to see during his investigation had the same cause as the wood rot, *i.e.* surface or subsurface water. Plaintiff's attempt to refute that conclusion through Mr. Brown must fail.

Firstly, Brown's 'opinion' is not an expert opinion at all. In fact, it is an admitted guess to which he is 'not positive'. His guess that 'maybe' water was coming in through the wall is not sufficient evidence for a reasonable jury to base a verdict upon. More importantly, Mr. Brown

cannot rule out that the infiltration of water through the slab was a contributing cause.

The insurance contract at issue disclaims all coverage for losses caused 'directly or indirectly' by surface water or water below the surface of the ground. "Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." Because there is no reliable evidence offered to show that surface or subsurface water was not a contributing cause of the loss, the denial of coverage issued by Vermont was proper.

The so-called "concurrent causation preface" has been enforced systematically by those courts reviewing similar exclusionary language under similar fact patterns. In *Front Row Theatre v. American Manufacturer's Mutual Ins. Co.* 18 F.3d 1343 (6th Cir. 1994) the theatre had a drain system in its parking lot that consisted of a series of man holes that drain water via underground pipelines to a lower set of manholes that connected to the sewers. A blockage in the pipeline caused storm waters to overflow. The water backed up out of the manholes into the driveway and accumulated, eventually flooding through the theatre's front doors.

The policy did not provide coverage for loss caused by "surface water". The policy did provide coverage for loss caused by "water that backs up from a sewer". The policy also contained an concurrent causation preface which read almost precisely as the one contained in Ms. Southgate's Vermont Mutual Policy.

The carrier argued that the loss was caused by surface water and was thus not covered. The policyholder argued that the loss was caused by a backed up sewer and thus the entire loss was covered. The Court analyzed and rejected both arguments.

The Court found that the loss occurred as a result of both surface water and water which backed up through a sewer. Accordingly, the Court applied "...the language of the policy that

specifically barred coverage where flooding was a contributory cause..., and precludes payment." That is, the concurrent causation preface was applicable and enforceable via summary judgment for the carrier.

In *Preferred Mutual Ins. Co. v. The Travelers Companies*, 123 F.3d 136 (1st Cir. 1997), Preferred had issued a Business Owner's Special Property Policy and Travelers had issued the Boiler and Machinery policy on a condominium tower in Springfield, Massachusetts. The Preferred policy was meant to cover a loss to the building and Traveler's Boiler and Machinery policy covered losses due to a failure of the boiler and related machinery. A fire broke out in the boiler which damaged the building. A leaky seal in the fuel pump that supplied oil to the burner that heated the boiler, allowed oil into the burner tube. This fire caused a melt, allowing the burner to fall, damaging the oil line. This released oil, that caught fire and burned.

Preferred attempted to pin exclusive liability for the loss on Traveler's Boiler and Machinery Policy. Traveler's policy contained an anti-concurrent causation preface just like the one in Vermont's Policy. Traveler's policy exclusions disclaimed coverage for "a fire or combustion explosion that occurs at the same time as an 'accident'" to an object.

Surely it is a complex loss and a somewhat vague exclusion. However, the First Circuit Court found the anti-concurrent preface language to "unambiguously mean what it says". Summary Judgment was upheld in favor of Travelers because the loss was caused, at least in part, by a specifically excluded cause and the application of the anti-concurrent causation lead-in.

This type of exclusionary language has been consistently upheld by courts reviewing coverage for losses with potentially covered and uncovered causes. *See Pakmark v. Liberty Mutual*, 943 S.W. 2d 256 (Mo. 1997) (the Court enforced the anti-concurrent language in a loss

that was caused by sewer back {covered} and surface water {uncovered} concurrent causes.); *Sunshine Motors v. New Hampshire Insurance Co.*, 209 Mich. App. 58, 530 N.W. 2d 120 (MI 1995) (the Court applied Michigan law to uphold the enforcement of an anti-concurrent preface where the loss was caused, once again, by sewers which backed up {covered} and surface water {uncovered} causes.);

In *Kula v. State Farm Fire and Cas. Co.*, 628 N.Y.S. 988 (1995) the insured discovered a crack in the foundation floor of his home. He removed part of the floor and discovered a large cavity where there should have been solid earth. Water from a ruptured pipe had washed away the soil supporting the corner of the house and caused the footer to sink. The insured argued sudden and accidental discharge of water from a pipe. The insurer pointed to the earth movement exclusion and the anti-concurrent preface. The Court granted summary judgment to the insurer. The lead-in causation clause was read in conjunction with the earth movement exclusion to exclude the loss whether or not combined with water. *See also* T.H.E. Insurance Co. v. Charles Boyer Children's Trust, ____ F.Supp. 2d ____ (M.D. Pa. 2006) where under Pennsylvania law, the Court upheld the anti-concurrent preface to enforce a surface water exclusion (non-covered) over a sewer pipe break (covered) which concurrently contributed to flood in a bowling alley.

Just last week in *Leonard v. Nationwide Mutual Ins. Co.*, ______ F.3d ______ (5th Cir. 2007) the Fifth Circuit upheld the application of the so-called "anti-concurrent causation" clause in a Hurricane Katrina related claim. Wind, a covered loss combined with water, a non-covered loss to cause damage to the insured home. The anti-concurrent cause language in the insured's policy was, in pertinent part, just like the same clause at issue in the instant matter. The

application of that clause worked to exclude the entire loss. This is a significant decision in light of the numerous Katrina related claims of a similar nature. The decision reinforces the unambiguous quality of the exclusionary language contained in the policy.

Once the insurer can show that the alleged loss was caused, at least in part, by a non-covered event the inquiry ends. No further contractual interpretation is required. It does not matter if another potentially covered cause of loss contributed. As the policy clearly states, "such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." In the instant case, it remains undisputed that the infiltration of surface water or water from below the surface of the ground caused the loss. At best, the plaintiff can offer only a 'guess' that 'maybe' there was another cause, but cannot rule out the excluded cause of loss.

## VI. Conclusion

For the reasons set forth above, defendant Vermont Mutual Insurance Company prays that this Honorable Court grant summary judgment in its favor on Count I - Breach of Contract to the plaintiff's amended complaint.

Defendant,
By its Attorneys,

/s/ John G. Hines (0576)
/s/ Robert P. Corrigan (4233)
Hines & Corrigan, Inc.
One James P. Murphy Highway
West Warwick, RI 02893
401-821-6266
401-821-6446 (fax)

DATED: September 13, 2007

**CERTIFICATION**

I, the undersigned, certify that I forwarded by electronic email the within document to the following counsel fo record on the 13 th day of September, 2007.

/s/ John G. Hines (0576)

Anthony F. Cottone, Esquire
55 Dorrance Street, Suite 400
Providence, RI 02903
cottonelaw@cox.net