UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ADRIENNE SOUTHGATE | | |
| *Plaintiff*, | : | |
| | : | |
| vs. | : | C.A. No. 06-500 ML |
| | : | |
| VERMONT MUTUAL | : | |
| INSURANCE COMPANY, | : | |
| *Defendant*. | : | |

**PLAINTIFF'S COUNTER STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56(a) AND IN SUPPORT OF HER OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I**

Plaintiff, ADRIENNE SOUTHGATE, submits the following Counter Statement of Undisputed Facts pursuant to Local Rule 56(a) and in support of her Objection to defendant VERMONT MUTUAL INSURANCE COMPANY'S motion for summary judgment as to Count I of her Complaint, which alleges breach of contract.

**I. Response to Defendant's Statement of Undisputed Facts**

1. Admitted.

2. Admitted.

3. Admitted, except it is denied that plaintiff "added an extension." In fact, the extension had been completed prior to plaintiff's purchase of the premises.

4. Admitted, except it is denied that the wooden sub-floor made the sub-floor "even with the finished floor of the original house." In fact, it remained uneven.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted, except to the extent that there is an inference that there was only one single area of wood rot.

15. Admitted, except to the extent that there is an inference that there was only one single area of mold.

16. Denied.

17. Admitted.

18. Admitted.

19. Admitted.

20. Plaintiff denies that there were only two areas of alleged property damages. The remaining facts are admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted, except to the extent that there is an inference that there was only a single area where mold was discovered.

25. Admitted, except to the extent that there is an inference that there was only in fact two areas of property damage.

26. Admitted.

27. Admitted.

28. Plaintiff admits that she "sought consultation with two or three different mold testing/remediation firms" but denies that she "continued to look for additional items of potential loss after the claim was denied."

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. This is properly the subject of expert testimony and can be neither admitted nor denied.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted.

## II. Additional Statements of Undisputed Fact[1]

1. On or about August 31, 2006 Southgate learned for the first time of water and mold damage at premises she owned at 22 Rosedale Avenue in Barrington, Rhode Island (the "Premises") after it was called to her attention by a laborer whom she had

[1] All cited Exhibits are attached to the parties' respective Memoranda.

engaged to replace certain wall-to-wall carpeting. See First Amended Verified Complaint (the "Complaint"), ¶ 5 at 2.

2. Southgate promptly informed Vermont Mutual of the water *and* mold damage and made a claim for remediation and for the loss of use of the Premises. See Complaint, ¶ 6 at 2.

3. Southgate repeated to Jeffrey Gorman, an adjuster hired by defendant, what she had been told, i.e. that "the sub-floor has rotted" and that "mold is crawling up your walls," and she and Gorman looked through the house "very carefully." See Southgate Depo. at 43.

4. According to Gorman, the property loss notice he received described most of the flooring in the Premises as "moldy and rotted," see deposition transcript of Jeffrey A. Gorman ("Gorman Depo., Vol. I") at 27.

5. Gorman: (a) made only one visit and spent, in total, "maybe 45 minutes" at the Premises, see id. at 36; and (b) had absolutely no expertise in mold or its remediation, see August 22, 2007 deposition transcript of Jeffrey A. Gorman ("Gorman Depo., Vol. II") at 15.

6. Gorman's arrangement with Vermont Mutual provided that he was to be paid a flat fee of $250, regardless of the amount of times he may have had to visit the Premises. Id. at 13.

7. Despite observing visible evidence of mold, see id. at 17, Gorman made only a visual inspection and did no objective testing of any kind. See Gorman Depo., Vol. I at 35, 37.

8. Gorman made clear at his deposition that he had no reason to conclude that Southgate had any prior awareness of either the water or mold damage prior to having been alerted to the problem in August of 2006. See Gorman Depo., Vol. II at 15.

9. On or about September 7, 2006 Gorman sent a so-called "First Report" to Vermont Mutual wherein he concluded, among other things, that: "The water damage appears to relate to the seepage of surface ***and/or*** subsurface water which has been occurring over a period of time." See Gorman's Report (emphasis added) at 2.

10. Gorman frankly admitted at his deposition that he did not follow-up in any way with respect to the mold he observed at the Premises, necessarily confining his conclusion as to causation to one specific floor area near a door where the sub-flooring had rotted, see Gorman Depo. at 28-31; Gorman's Report at 2-3, which Gorman frankly admitted could have been caused by *either* surface or sub-surface water; he was not sure which. See id. at 35.

11. Gorman then provided Vermont Mutual with his opinion that there was no coverage available under the Policy and sent Vermont Mutual a proposed declination letter which quoted: (a) a so-called mold endorsement to the Policy; and (b) certain other Policy language pertaining to water exclusions. See Gorman's Report at 5-10.

12. The mold endorsement provided, in pertinent part, that the policy does not cover various types of damage caused from water leakage "***unless***":

> such seepage or leakage of water or the pressure or condensation of humidity, moisture or vapor and the resulting damage is unknown to all 'insureds' and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

See Policy at 30, Limited Fungi, Wet or Dry Rot or Bacteria Coverage Endorsement (HO 04-32 05 02) at page 2, adding ¶ 2.e.(9) to Section I, Perils Insured Against (the "Mold Endorsement").

13. The water exclusion language quoted by Gorman in his proposed declination letter was not even a part of the Policy, having been expressly "deleted and replaced by the following":

> 3. Water damage, meaning:
> a. Flood surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or
> b. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

See Policy at 22 (VM_CEA 3/99 Page 2 of 3, Section 4).

14. In the declination letter actually sent to Southgate, Vermont Mutual: (a) removed the language from the Mold Endorsement which had originally been included by Gorman; but nonetheless (b) included and relied upon the erroneously-quoted water exclusion language that had been expressly "deleted and replaced". See September 12, 2007 Declination Letter.

15. On October 2, 2006, Southgate wrote Vermont Mutual's adjusting firm to call its attention to the Mold Endorsement which, as noted, expressly covered damage caused by: "seepage or leakage of water or the presence or condensation humidity, moisture or vapor" when the "resulting damage is unknown to all 'insureds' and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure." See Exhibit 4.

16. Southgate also requested that Vermont Mutual provide her with the specific facts which led it to conclude that the mold damage in question was not covered under the Policy. Id.

17. On October 11, 2006, Southgate - after having provided Vermont Mutual with three estimates to remediate the problem (estimates which Vermont Mutual did not bother to share with Gorman, see Gorman Depo. at 53) - went ahead and contracted for the remediation of the problem. See Exhibit 5.

18. On October 16, 2006, Vermont Mutual's attorney claimed that since "the origin of the water in [Southgate's] realty was through the entering of surface water or water below the surface of the ground," see Exhibit 6, the mold damage was excluded under the water exclusion that had been cited earlier. Id. at 2.

19. Vermont Mutual's attorney also cited (*for the first time*) so-called anti-concurrent language in the Policy which, it claimed, "trumps paragraph 2e(9) of the [mold] endorsement. See id. at 3.

20. On October 23, 2006, Southgate wrote back to inform Vermont Mutual that:

> (1) the exclusion it relied upon had in fact been deleted from the Policy by a so-called "Homeowners Coverage Enhancement Amendment" (see the Policy, attached as Exhibit 2 to the Gorman Depo., at 22 (VM_CEA 3/99 Page 2 of 3, Section 4); and
>
> (2) the plain language of the Mold Endorsement provided that "seepage or leakage of water" which causes mold damage is in fact covered provided it is unknown to the insureds and hidden, which was exactly the case here; and
>
> (3) the inference in counsel's October 16 letter that the visible pooling of water in the front and rear yards during heavy rain was in any way related to the mold damage was simply unfounded.

See Exhibit 7.

21. Neither Gorman nor Michael Brown possessed the qualifications or had done the testing necessary to come to any conclusion as to the cause of the mold damage.

22. Gorman frankly admitted that he was "not an expert in mold," Gorman Depo. II at 17, and therefore it would be necessary for Vermont Mutual to hire such an expert, *which was not done here*. Id. at 17-18.

Plaintiff,
ADRIENNE SOUTHGATE,
By her attorney,

/s/Anthony F. Cottone
Anthony F. Cottone, #3922
55 Dorrance Street
Suite 400
Providence, RI 02903
Tel: (401) 578-5696
Fax: (401) 861-2922
cottonelaw@cox.net

**Certification**

I hereby certify that a true and accurate copy of the above Counter Statement of Undisputed Facts was filed electronically and sent by electronic mail to John G. Hines, Esq., HINES AND CORRIGAN, INC., One James P. Murphy Highway, West Warwick, RI 02893 at HINES-CORRIGAN@CONVERSENT.NET on this 20th day of November, 2007.

/s/Anthony F. Cottone